Paul S. **RICHTER,** Plaintiff, Counter–
Defendant, and Third Party
Plaintiff,

v.

**ANALEX CORPORATION,** Defendant
and Counter–Plaintiff,

v.

Alan C. **DUVALL,** et al., Third
Party Defendants.

Civil Action No. 95–1230 (PLF).

United States District Court,
District of Columbia.

Oct. 4, 1996.

William F. Causey, Peabody & Brown, Washington, DC, for Plaintiff.

William R. O'Brien, Alan Baron, Peder Garske, Howrey & Simon, Washington, DC, for Defendant.

William McGrath, Porter, Wright & Morris, Washington, DC, for Third Party Defendants.

## *OPINION*

PAUL L. FRIEDMAN, District Judge.

Analex D.C. was a District of Columbia corporation for which plaintiff, Paul S. Richter, served as counsel from 1982 until 1989. In 1986, Analex D.C. paid large bonuses to two of its former officials and in 1987 and 1988, it negotiated consulting agreements with them. Analex D.C. "passed through" the costs of these bonuses and consulting agreements to NASA with which it had an aerospace contract. As a result of these activities, Analex D.C. incurred both criminal and civil liabilities, pleading guilty in 1994 to one count of submitting a false claim. On March 31, 1990, defendant Analex Corporation ("defendant" or "Analex"), a Nevada corporation, purchased "certain assets" from Analex D.C., which then, in April 1990, changed its name to Xanalex.[1] Defendant

---

1. The Court will sometimes refer to Analex D.C. as Xanalex in order to better distinguish it from the named defendant in this case.

Analex also assumed financial responsibility for some of the fines imposed upon Xanalex.

Plaintiff has now brought this action against Analex for breach of contract, collection of obligations, intentional interference with contractual relations and conversion. Defendant has counterclaimed for legal malpractice. Plaintiff also filed a third party complaint for contribution and indemnification against Alan C. Duvall, Raymond P. Kinney, Jr., and Duvall & Associates, Inc., an accounting firm headquartered in Ohio that was retained by Analex D.C. since 1986 and by Analex since 1989. This case is now before the Court on Plaintiff's Motion to Dismiss the Counterclaim and Third Party Defendants' Motion to Dismiss the Third Party Complaint.

## I. PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM

■ This motion revolves around the single issue of whether defendant Analex can assert Xanalex's legal malpractice claim against plaintiff. The parties agree that generally a third party cannot bring a malpractice claim against another person's attorney even where that third party has suffered harm from the attorney's malpractice. *See Needham v. Hamilton*, 459 A.2d 1060, 1061 (D.C.1983). Defendant argues, however, that Analex acquired the malpractice claim, along with Xanalex's liabilities with respect to the bonuses and consulting agreements and all of Xanalex's assets, and that as successor and assignee it can assert Xanalex's claim against plaintiff. Plaintiff responds that Analex and Xanalex are two separate and independent entities, that Analex never acquired the rights to Xanalex's malpractice claim, that Xanalex still exists, and that Xanalex could still bring the malpractice claim itself if it chose to do so.

### A. Analex as Successor

■ Defendant maintains that because it purchased the assets and liabilities of Analex

D.C. and continues Analex D.C.'s business, it is the successor to Analex D.C. for purposes of this suit. Analex did not purchase *all* of Analex D.C.'s assets, however; the sales contract appears to transfer only "certain assets" and those assets are specifically enumerated. Agreement of Sale and Purchase at 1, Def.'s Opp'n, Ex. A. Moreover, Xanalex entered into a Covenant Not to Compete with Analex which suggests that Xanalex still exists in more than merely a formal way. Def.'s Opp'n, Exs. C, D. It follows from these facts that defendant does not automatically succeed to the right of Xanalex to pursue its legal malpractice claim.

Defendant cites *Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 90 (D.C.1994), *Dawn v. Stern Equipment Co.*, 134 A.2d 341 (D.C.Mun.Ct.App.1957), and *Colonial Ice Cream Co. v. Southland Ice Utilities Corp.*, 53 F.2d 932 (D.C.Cir.1931), for the proposition that where one entity takes over the assets of another and there is a continuation of the same business, the new entity is the successor in interest and acquires *all* the predecessor's rights of action. The court in *Bingham* made clear, however, that where the selling entity continues to exist in a way that is not merely formal, the acquiring entity is *not* the successor for purposes of bringing pre-existing claims. Accordingly, these cases do not support defendant's position and defendant has failed to show that it is the successor to Analex D.C. as a matter of law or fact.

### B. Analex as Assignee

Defendant next argues that under District of Columbia law, the general rule is that all claims are freely assignable, *National Union Fire Ins. Co. v. Riggs National Bank*, 5 F.3d 554, 556 (D.C.Cir.1993), and that Analex D.C. assigned its legal malpractice claim against plaintiff to defendant.[2] It relies on the following language in the sales contract:

WHEREAS, Seller [Analex D.C.] desires to sell to Purchaser [Analex Corporation]

---

**2.** Section 28–2304 of the District of Columbia Code provides:

In a general assignment which includes choses in action, it is not necessary to execute a separate assignment of each chose in action, but the assignee, by virtue of the general assignment, may sue in his own name on the several choses in action included therein.
D.C.Code § 28–2304.

... *certain assets* of Seller.... "Assets" means and includes all the following assets of the Seller: ... [listing various contract numbers]; and all other assets which are legally transferable relating to or used in the Contracting Business including: work in progress, business and financial records, customer and contact lists, [ ] insurance policies, *claims and demands,* deposits, [etc.]

Def.'s Opp'n, Ex. A at 1–2 (emphasis added).

 Plaintiff responds that the use of the terms "claims and demands" in the contract is not dispositive because legal malpractice claims are simply not assignable as a matter of law. The parties agree that no court has yet decided whether a legal malpractice claim is assignable under District of Columbia law and that other states are split on the issue, *see Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d 313, 315 (Tex.App.1994), with a majority of states barring the assignment of such claims. *Id.*[3]

The courts that have barred the assignment of legal malpractice claims have relied primarily on factors not present in this case, including the fear that parties will sell off claims, particularly to opponents or completely unrelated third parties, and a concern about jeopardizing the personal nature of legal services. *See Zuniga v. Groce, Locke & Hebdon,* 878 S.W.2d at 315; *Joos v. Drillock,* 127 Mich.App. 99, 338 N.W.2d 736, 738 (1983); *Goodley v. Wank and Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal.Rptr. 83 (1976); *cf. Bank IV Wichita, National Assoc. v. Arn, Mullins, Unruh, Kuhn & Wilson,* 250 Kan.

490, 827 P.2d 758 764–65 (1992) (borrower could not assign his legal malpractice claim to his lending bank); *Schroeder v. Hudgins,* 142 Ariz. 395, 690 P.2d 114 (Ariz.Ct.App. 1984) (bankrupt company could not assign its malpractice claim to shareholder).[4]

By contrast, the Pennsylvania Supreme Court confronted facts more like those in the case at bar and recognized the legitimacy of assigning a legal malpractice claim in that context. *See Hedlund Mfg. Co. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 539 A.2d 357, 359 (1988) (claim could be assigned where a business bought another business and its patent and sued the predecessor's attorney for failing to file the patent properly). The Pennsylvania Supreme Court in *Hedlund* also relied on the fact that generally only pecuniary interests are at stake in legal malpractice claims. 539 A.2d at 359. *See also Thurston v. Continental Casualty Co.,* 567 A.2d 922, 923 (Me.1989) (corporation that surrendered its assets could assign its legal malpractice claim to a products liability plaintiff where she had "an intimate connection with the underlying lawsuit"); *Collins v. Fitzwater,* 277 Or. 401, 560 P.2d 1074, 1077–78 (1977) (corporate director could assign his legal malpractice claim against corporate attorney to purchasers of securities), *disavowed on other grounds, Lancaster v. Royal Ins. Co. of America,* 302 Or. 62, 726 P.2d 371 (1986); *Oppel v. Empire Mutual Ins.,* 517 F.Supp. 1305, 1307 (E.D.N.Y.1981) (legal malpractice claim was based on both breach of implied contract and tort and therefore was assignable under New York law).[5]

---

**3.** Courts in Texas, Michigan, California, Arizona, Colorado, Florida, Indiana, Kansas, Kentucky, Minnesota, and Nevada have held that a legal malpractice claim cannot be assigned, while courts in Pennsylvania, Maine, Oregon, New York, Washington, and Alaska have held that it can. *See* Def.'s Opp'n at 8–10; Pl.'s Reply at 11–13.

**4.** The leading case followed by most courts barring assignment, *Goodley v. Wank and Wank, Inc.,* was a classic example of an attorney failing to provide adequate personal legal services given the individual needs of a client. In that case, a law firm failed to safeguard a client's documents and, as a result, her husband canceled their insurance policies during their divorce. The client attempted to assign her legal malpractice

claim to the plaintiff who apparently had no other connection to the case. In finding the assignment invalid, the Court noted that

[t]he assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights.

133 Cal.Rptr. at 87.

**5.** The Indiana Supreme Court has decided only that legal malpractice claims cannot be assigned to an adversary, which is not the case here. *Picadilly, Inc. v. Raikos,* 582 N.E.2d 338 (Ind. 1991).

In this case, plaintiff was the attorney for the predecessor corporation whose liabilities now burden defendant. The legal malpractice claim was not bartered or sold to an unrelated third party; indeed, Analex argues that its liabilities, assumed from Xanalex, arose directly out of plaintiff's conduct. Moreover, the interests involved are purely pecuniary in nature and do not implicate the kinds of concerns raised by the sale or assignment of a personal injury claim. As the Supreme Court of Maine persuasively put it,

> there is no reason to prohibit the assignment of a legal malpractice claim in a situation such as this. We are not here confronted with the establishment of a general market for such claims; this assignee has an intimate connection with the underlying lawsuit.... A legal malpractice claim is not for personal injury, but for economic harm. The argument that legal services are personal and involve confidential attorney-client relationships does not justify preventing a client like [this one] from realizing the value of its malpractice claim in what may be the most efficient way possible, namely, its assignment to someone else with a clear interest in the claim who also has the time, energy and resources to bring the suit.

*Thurston v. Continental Casualty Co.,* 567 A.2d at 923.

This Court concludes that in circumstances such as these, public policy does not prohibit the assignment of a legal malpractice claim and District of Columbia law does not prevent it. D.C.Code § 28–2304; *National Union Fire Ins. Co. v. Riggs National Bank,* 5 F.3d at 556; *see Ikuno v. Yip,* 912 F.2d 306, 314 (9th Cir.1990) (where Washington State legislature had placed no limit on the broad execution statute and state court had interpreted execution statute broadly in other contexts, the court should not import a public policy exception for legal negligence claim). Analex D.C. therefore could assign its legal malpractice claim against plaintiff to defendant. Whether in fact it did so remains for the parties to develop through discovery and, possibly, at trial. For these reasons, defendant's motion to dismiss the counterclaim will be denied.

## II. THIRD PARTY DEFENDANTS' MOTION TO DISMISS

Plaintiff has brought a third party complaint for contribution and indemnification against Duvall & Associates Inc., the accounting firm that provided accounting and auditing services to Xanalex during the period when Xanalex entered into the consulting agreements at issue, as well as against Alan Duvall, the firm's managing partner, and Raymond Kinney, the firm's audit partner, both certified public accountants. Plaintiff argues that if defendants recover for their counterclaim of malpractice against plaintiff, plaintiff should be able to recover from the third party defendants as joint tortfeasors because they were giving Xanalex advice at the time and knew or should have known about the improprieties and failed to identify or report them.

The third party defendants have moved to dismiss on four grounds: (1) the Court lacks personal jurisdiction over them because they are headquartered in Ohio and worked with Xanalex's Ohio office, not its D.C. office, (2) all the actions relevant to this litigation took place in Ohio and all the documents and witnesses (except plaintiff) relevant to the third party complaint are in Ohio, (3) the third party complaint fails to state a claim because the counterclaim is for legal malpractice and none of the third party defendants provided legal advice to Xanalex, and (4) indemnification is a contractual remedy and the third party defendants owed plaintiff no contractual duty.

### A. Personal Jurisdiction

■ The District of Columbia long-arm statute creates personal jurisdiction over a person "transacting any business in the District of Columbia." D.C.Code § 13–423(a)(1). The third party defendants argue that Duvall & Associates is an Ohio firm that has transacted no business in the District of Columbia. Plaintiff, on the other hand, identifies the following sources of contact between the third party defendants and the District of Columbia which, he maintains, separately or together provide jurisdiction: (1) Duvall & Associates was hired by plaintiff Richter's

D.C. law firm to do an internal audit of Xanalex, (2) the third party defendants forwarded work papers to Mr. Richter's law firm in the District of Columbia and engaged in correspondence with the firm, (3) Duvall & Associates prepared Xanalex's District of Columbia tax returns, (4) Duvall & Associates prepared auditor reports that it knew people in the District of Columbia, particularly Mr. Richter, would rely on, and (5) Mr. Duvall visited Washington, D.C. twice and Mr. Kinney visited once in order to discuss their work for Xanalex and to meet with Xanalex's law firm, Howrey & Simon. With the exception of this last point, none of these sources of contact provides long-arm jurisdiction under District of Columbia law.

■ In order to establish personal jurisdiction under the "transacting business" provision of the District of Columbia long-arm statute, plaintiff must prove that (1) defendant transacted business in the District, (2) the claim arose from the business transacted in the District, and (3) the defendant purposely established minimum contacts with the District such that the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F.Supp. 46, 48 (D.D.C.1994); *Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F.Supp. 558, 563–64 (D.D.C.1981); *see Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 108–09, 107 S.Ct. 1026, 1030–31, 94 L.Ed.2d 92 (1987). Plaintiff bears the burden of establishing the factual basis for the exercise of personal jurisdiction. *Edmond v. United States Postal Service General Counsel*, 949 F.2d 415, 424 (D.C.Cir. 1991); *First Chicago International v. United Exchange Co., Ltd.*, 836 F.2d 1375, 1378–79 (D.C.Cir.1988).

■ With respect to the requirement of minimum contacts, it is established that plaintiff's conduct alone, or that of his agents, cannot establish jurisdiction. As the Supreme Court has held, "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183, 85

L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958)). Rather, a defendant or its agents must "purposefully avail" itself of the forum in order to satisfy due process concerns. *Id.* at 475, 105 S.Ct. at 2183–84. "A plaintiff may not ... depend upon his own activity to establish the existence of minimum contacts; the defendant must in some way have voluntarily and purposefully availed himself of the protection of the forum state's laws." *Reiman v. First Union Real Estate Equity & Mortgage Investments*, 614 F.Supp. 255, 257 (D.D.C. 1985).

■ Since plaintiff's activities cannot bring defendant within the Court's jurisdiction, *Burger King Corp. v. Rudzewicz*, 471 U.S. at 474, 105 S.Ct. at 2183, the fact that his District of Columbia law firm hired Duvall & Associates on behalf of Xanalex, *see* Letter from Paul S. Richter to Alan Duvall (Nov. 24, 1986), Pl.'s Opp'n, Ex. A1, and may have relied on the firm's work does not establish that Duvall & Associates itself transacted business in the District. Nor do the facts that Duvall & Associates forwarded work papers to Mr. Richter's law firm in the District and engaged in correspondence with the firm establish a "substantial connection" with the District; these mailings were incidental to Duvall & Associates' primary relationship with Xanalex's Ohio office. *See Burger King Corp. v. Rudzewicz*, 471 U.S. at 475, 105 S.Ct. at 2183–84; *Health Communications, Inc. v. Mariner Corp.*, 860 F.2d 460, 461 (D.C.Cir.1988). Furthermore, since there are no allegations that Duvall & Associates' preparation of Xanalex's tax returns was relevant in any way to this action, the legal malpractice claim could not have "aris[en] from" those transactions. *See* D.C.Code § 13–423(b); *Novak–Canzeri v. Saud*, 864 F.Supp. 203, 206 (D.D.C.1994). Finally, Mr. Kinney visited the District of Columbia only once, in 1993, after the bonuses were paid and the consulting agreements were formed; therefore the malpractice claim could not have arisen out of that transaction either. Since Mr. Kinney had no other contacts with the District, the Court lacks personal jurisdiction over him and he will be dismissed.

*See Wiggins v. Equifax Inc.*, 853 F.Supp. 500, 503 (D.D.C.1994).

■ On the other hand, Mr. Duvall visited the District of Columbia twice, once in 1988 and once in 1993, in order to discuss his and his firm's work for Xanalex and to meet with lawyers at Howrey & Simon. Although he denies that he discussed the bonuses and consulting agreements in 1988, his notes taken during that meeting refer to "agreements" and "certain bonuses" which might well refer to the consulting agreements and bonuses at issue. Pl.'s Opp'n, Ex. 12. If Mr. Duvall advised Xanalex on the consulting agreements and bonuses that gave rise to this action during that 1988 meeting in the District, that would establish sufficient minimum contacts and constitute transacting business under the long-arm statute. *See Mitchell Energy Corp. v. Mary Helen Coal Co.*, 524 F.Supp. at 563–64.[6] Since Mr. Duvall was the agent of Duvall & Associates at the time, Duvall & Associates also may have transacted business in the District of Columbia. Accordingly, the Court cannot find at this stage of the litigation that it lacks personal jurisdiction over Mr. Duvall and Duvall & Associates.[7]

### B. Transfer

■ Defendants argue that at the very least the Court should transfer this case to Ohio under 28 U.S.C. § 1404 for the convenience of the parties because all the relevant documents and witnesses, except for Mr. Richter, are there.[8] The original complaint, however, describes a claim by a Washington, D.C. attorney against a Washington, D.C. corporation. For this reason, the action properly belongs here, even though third party defendants have identified some impor-

tant documents and witnesses located in Ohio and seek to characterize the entire action as a dispute between "an Ohio accounting firm [that] provided legal [sic] services for the Ohio headquarters of Xanalex, with the work being performed and paid for in Ohio." Third Party Defs.' Mot. at 26.[9] The Court is convinced that the original claims should be litigated in this Court and, accordingly, will not transfer this case to Ohio.

### C. The Legal Malpractice Claim

■ The third party defendants argue that even if the Court has jurisdiction they cannot be joint tortfeasors with plaintiff in a *legal* malpractice action because they provided no *legal* advice to Xanalex. Plaintiff replies that the precise nature of the conduct of joint tortfeasors in an action for contribution is irrelevant so long as they contributed to the same injury. Since the injury to Xanalex asserted by the counterclaim is broad, Mr. Duvall and Duvall & Associates could well have contributed to that injury. *See R & G Orthopedic Appliances v. Curtin*, 596 A.2d 530 (D.C.1991) (permitting joint claims to proceed against manufacturer for negligence and a hospital for medical malpractice). Accordingly the third party defendants' motion to dismiss on this basis also fails.

### D. Indemnification

■ Indemnification is available under two theories: contract (or implied contract) and equitable where "required to prevent injustice." *R & G Orthopedic Appliances v. Curtin*, 596 A.2d 530, 544 (D.C. 1991). Since there was no contract, actual or implied, between the third party defendants and plaintiff, plaintiff relies mainly on an equitable indemnification theory.

---

6. As with Mr. Kinney, Mr. Duvall's 1993 visit came too late to provide jurisdiction.

7. After Mr. Duvall is deposed, he and Duvall & Associates may renew their motion to dismiss if they believe such a motion is justified.

8. The third party defendants do not dispute that venue is proper in the District of Columbia, even though it might be inconvenient for them. *See* 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1445 (1990).

9. Nor can the third party claims be transferred alone. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1518 (10th Cir. 1991) (28 U.S.C. § 1404 "only authorizes the transfer of an entire action, not individual claims."). The Court declines to sever the third party defendants in order to permit their claims to be litigated separately in Ohio; the parties have not requested it, and it would be a waste of judicial and private resources to litigate this action in two forums.

Indemnity is a shifting of responsibility from the shoulders of one person to another; and the duty to indemnify has been recognized where the equities have supported it. A court's view of the equities may have been based upon the relation of the parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind of quality or their conduct.

*Id.* at 545 (quoting PROSSER & KEETON, THE LAW OF TORTS § 51) (1984). Although conceivably facts could be developed that would show that Duvall & Associates worsened Xanalex's situation, it was plaintiff's conduct in giving legal advice, rather than the conduct of Mr. Duvall and Duvall & Associates in failing to spot it or report it, that drives the counterclaim. Taking all of plaintiff's allegations as true, it cannot fairly be said that the third party defendants' conduct so worsened Xanalex's injury that they became responsible for it. For this reason, plaintiff's claim for indemnification will be dismissed.

An Order consistent with this Opinion shall be entered this same day.

SO ORDERED.

### ORDER

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that Plaintiff's Motion to Dismiss the Counterclaim is DENIED; it is

FURTHER ORDERED that Third Party Defendants' Motion to Dismiss the Third Party Complaint is GRANTED in part and DENIED in part. The claim for indemnification against all third party defendants is DISMISSED. Third party defendant Raymond Kinney is DISMISSED from this case.

SO ORDERED.