CERBERUS PARTNERS, L.P., et al.

v.

GADSBY & HANNAH et al.

No. 98–28–Appeal.

Supreme Court of Rhode Island.

April 26, 1999.

Matthew F. Medeiros, Fausto Anguilla, Providence, Brian Fraser, and Kenneth P. Held, New York City, for Plaintiff.

John T. Walsh, Providence, James Degiacomo, Boston, MA, Allen P. Rubin, Lawrence P. McCarthy, Providence, Lawrence Kenney, Boston, MA, Leslie D. Corwin, New York City, and Judith K. Wyman, Boston, MA, for Defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

BOURCIER, Justice.

This case comes before us on the plaintiffs' appeal from a Superior Court judgment granting the defendant's motion for summary judgment. We are called upon to determine the validity of the voluntary assignment of a legal malpractice claim as part of a commercial transaction.

The plaintiffs in this action, Cerberus Partners, L.P., Chase Manhattan Bank, D.K. Acquisition Partners, L.P., Goldman Sachs Credit Partners, L.P., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and Silver Oak Capital L.L.C. (collectively, the plaintiffs), are all financial institutions that purchased loans given by a group of lenders (collectively, the Lenders) to SLM International, Inc. (SLM).[1] The loans given to SLM and bought by the plaintiffs totaled $134 million. The defendants in this action are two law firms, Gadsby & Hannah (Gadsby) and Schatz & Schatz, Ribicoff & Kotkin (Schatz), and their current and former partners (collectively, the defendants). The defendants represented the Lenders in the loan transactions with SLM. It is the plaintiffs' contention that the defendants failed to per-

---

1.  Goldman Sachs Credit Partners, L.P. was for-   merly known as Pearl Street, L.P.

fect the Lenders' security interest in SLM's assets, and that as a result, after SLM filed a voluntary petition for reorganization under the Bankruptcy Code, the plaintiffs were unable to collect the full value of the loans they had purchased from the Lenders. Consequently, the plaintiffs brought this action for legal malpractice, negligent misrepresentation and omissions, breach of a third-party beneficiary contract, and breach of contract against the defendants. The facts leading to the plaintiffs' action, which are essentially undisputed, are as follows.

On December 3, 1992, SLM entered into a loan and security agreement with Fleet Credit Corporation (Fleet) which, in addition to being a lender itself, was acting as an agent for all of the Lenders. Gadsby was retained by Fleet as counsel for the transaction with SLM. In 1994, the loan and security agreement was amended to include a business acquisition in New Hampshire by an SLM subsidiary, Masca, USA (Masca). Although Gadsby filed financing statements in New Hampshire with respect to the acquired company's assets and inventory, it did not file a financing statement in New Hampshire with respect to Masca's assets and inventory. Therefore, when Masca moved its inventory from Vermont to New Hampshire, Fleet and the Lenders' security interest in those assets and inventory became unperfected.

In late 1994, SLM began experiencing financial difficulties. Gadsby was replaced by Schatz as counsel for Fleet and the Lenders. On March 2, 1995, some of SLM's creditors filed petitions against SLM in the bankruptcy courts of Delaware and Canada. Those petitions were eventually dismissed. However, on October 24, 1995, SLM filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Also on October 24, Masca commenced an action against Fleet to avoid the lien from the Lenders' security interest in Masca's inventory in New Hampshire. That action between Fleet and Masca later was settled pursuant to a court-approved settlement agreement.

After the creditors of SLM commenced bankruptcy proceedings against SLM in March 1995, certain of the Lenders, including

Fleet, began selling their SLM loans, including all of their rights and obligations connected with those loans, to other financial institutions. Those financial institutions are the plaintiffs in this action.

Because the security interest arising from the loans was not perfected in New Hampshire, the plaintiffs were unable to receive the full value of the purchased loans and were forced to settle with SLM for an amount less than the total original value of the loans. The plaintiffs claim that it was Gadsby's negligence that caused their security interests to not be perfected and that Schatz was negligent in not discovering Gadsby's error and failing to notice the defect in the security interest even though they were aware of SLM's financial difficulties and SLM's imminent bankruptcy. The plaintiffs posit that as the successors in interest to the original Lenders, they are entitled to assert their claims for legal malpractice, negligent misrepresentation and omissions, breach of a third-party beneficiary contract, and breach of contract against those law firms and their partners and that the claims should be determined in accordance with the law of New York. The defendants disagree, however. Consequently, in response to the plaintiffs' Superior Court civil action, Gadsby filed a motion to dismiss the plaintiffs' claims, pursuant to Rule 12(b)(6) of the Superior Court Rules of Civil Procedure. Along with their objection to that motion, the plaintiffs filed numerous loan documents and agreements as well as an affidavit supporting the basis of their claims. Hearings on the dismissal motion were held on November 4 and December 9, 1997. The hearing justice, in the course of his decision on the motion, informed counsel that he was treating the defendants' motion to dismiss as a motion for summary judgment, pursuant to Rule 56 of the Superior Court Rules of Civil Procedure, because he had undertaken to consider materials submitted by the plaintiffs that were outside of the pleadings. He then granted the defendants' motion for summary judgment stating as grounds for his decision that there was no attorney-client relationship that existed between the plaintiffs and

the defendants, which he determined was required by Rhode Island law before a legal malpractice action could be maintained. He also determined that this state's public policy precluded the assignment of legal malpractice actions. Accordingly, the trial justice dismissed the plaintiffs' entire complaint. We conclude that Rhode Island law applies to this action and that the assignment of legal malpractice claims as part of a larger commercial transaction, such as the one in this case, are permitted under Rhode Island law.

## I

### Choice of Law

■ Rhode Island law applies in this case. The original loan agreements between the Lenders and SLM contained choice of law provisions that designated Rhode Island law as the controlling law. Those agreements also contained suggested assignment agreement forms to be used if the loans were assigned in the future. Those forms also designated Rhode Island law as controlling.[2] The assignment agreements between the Lenders and the plaintiffs, however, designated New York law as controlling.

Under those assignment agreements, the plaintiffs acquired all of the rights and obligations that the Lenders had under the original loan agreements, no more and no less. Thus, they acquired the same rights that the Lenders had to bring a legal malpractice action. Had the Lenders brought the legal malpractice action against the defendants, they would have done so pursuant to Rhode Island law, as required by the choice of law provision in the original loan agreements. The plaintiffs, because they were assignees of the Lenders who possessed no greater rights than the Lenders to bring the legal malpractice action, were, like the Lenders, limited by the same choice of law provision in the original loan agreements when they decided to bring this legal malpractice action against the defendants. The New York choice of law provision in the subsequent assignment agreement would, as a result, only apply to the assignment agreements and to any actions arising from those particular assignment agreements. New York law

would not apply to actions arising from the original loan agreements, such as the instant legal malpractice action. Accordingly, the New York choice of law provision has no connection to this legal malpractice action commenced in Rhode Island, which pursuant to the original loan agreements, is governed by the laws of this state.

## II

### Assignment of Legal Malpractice Claim

■ The issue raised in this case regarding the assignment of legal malpractice claims as an integral part of a larger commercial transaction is an issue of first impression in Rhode Island. We conclude that on the specific factual circumstances present in this case, where an assignee of a commercial loan agreement brings a legal malpractice action against the attorney who represented the original lender in the commercial loan transaction, the assignment of that negligence claim, if arising from the assigned commercial loan agreement, is not prohibited by Rhode Island law.

The legal malpractice claim asserted by the plaintiffs here arose out of a larger earlier commercial loan transaction. The plaintiffs did not merely purchase the legal malpractice claim, but were instead the assignees of the Lenders' original agreements with respect to the loans to SLM, and the plaintiffs acquired, along with those loans, all of the attendant obligations and rights that went along with those loans, including but not limited to the Lenders' legal malpractice action against the defendants. Thus, we are not dealing here with a situation where a legal malpractice claim was transferred to a person without any other rights or obligations being transferred along with it. That was the factual situation present in the great majority of the cases cited to us from other jurisdictions that have considered the issue of the assignability of legal malpractice claims and it was upon those particular facts that the case holdings of nonassignability appear to have been predicated. *See, e.g., Goodley v.*

2. Those forms were used by the plaintiffs in addition to their own assignment agreements.

*Wank and Wank, Inc.,* 62 Cal.App.3d 389, 133 Cal.Rptr. 83, 87 (1976).

In *Goodley,* involving a divorce proceeding, the wife's attorney had failed to obtain an order restraining the husband from altering or cancelling certain life insurance policies. The husband cancelled the policies and shortly thereafter died of cancer. The wife assigned her rights against her attorneys for that alleged negligence. The California Court of Appeals held that her chose of action for·legal malpractice was not assignable because of policy considerations. The court stated that "[i]t is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney-client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment." *Goodley,* 133 Cal.Rptr. at 87.

While *Goodley,* one of the first cases to deny assignment of a legal malpractice claim, is certainly the most cited holding in support of non-assignability, both time and academic criticism have served to question its general blanket application to all manner of assignability of legal malpractice claims. *See, e.g.,* Michael Sean Quinn, *On the Assignment of Legal Malpractice Claims,* 37 S.Tex.L.Rev. 1203 (1996).

The Supreme Judicial Court of Massachusetts, on March 10, 1999, (noting the South Texas law review article) concluded that a voluntary assignment of a legal malpractice claim was enforceable in that jurisdiction. *New Hampshire Insurance Co. v. McCann, Inc.,* 429 Mass. 202, 707 N.E.2d 332 (1999). The Massachusetts court, while recognizing that the clear majority of states in which assignability of such claims has been litigated have prohibited enforcement of such assignments,[3] nonetheless opted to align itself with the five jurisdictions that have ruled in favor of assignability.[4]

■ We are cognizant of the various and plausible, but in the main, public policy reasons related in those case holdings from those jurisdictions in which assignment of legal malpractice claims have been prohibited. We are not persuaded, however, that any public policy in this jurisdiction mandates blind adherence to a general rule of prohibition in all cases of assignment. We acknowledge the distinction between market assignments involving purely economic transactions, such as involved in the case before us, and freestanding malpractice personal injury claim assignments that necessarily involve and invoke the unique lawyer-client relationship and duty of confidentiality; privity, and the duty of the lawyer that runs only to the client; the creation of possible commercial markets for such claims; and the demeaning of the legal profession along with the prospect of having attorneys defend themselves against strangers and the possibility of being forced to divulge confidential lawyer-client information in defending against assigned claims. We believe, however, that an assignment, such as the sort that is involved in this particular case, serves as a waiver of the client's attorney-client privilege.

We are persuaded of the soundness of the reasoning employed by those courts in jurisdictions that have distinguished between the voluntary assignment of a bare legal claim for malpractice and the assignment of a claim for malpractice that is part of a general assignment in a commercial setting and transaction that encompasses a panoply of other assigned rights, duties, and obligations.

For example, in *Richter v. Analex Corp.,* 940 F.Supp. 353 (D.D.C.1996), Analex purchased certain assets of Xanalex. In a law suit filed against Analex by Richter, former counsel for Xanalex, Analex counterclaimed for legal malpractice relating to the treatment of bonuses and consulting agreements that had caused Xanalex to incur both crimi-

---

**3.** *See* 1 Mallen & Smith, *Legal Malpractice* § 7.8 at 501 (4th ed.1996); Francis M. Dougherty, J.D., *Assignability of Claim for Legal Malpractice,* 40 A.L.R.4th 684 (1985).

**4.** *See, e.g., Richter v. Analex Corp.,* 940 F.Supp. 353 (D.D.C.1996); *Thurston v. Continental Casu-*

*alty Co.,* 567 A.2d 922 (Me.1989); *Vitale v. City of New York,* 183 A.D.2d 502, 583 N.Y.S.2d 445 (1992); *Collins v. Fitzwater,* 277 Or. 401, 560 P.2d 1074 (1977); *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak,* 517 Pa. 522, 539 A.2d 357 (1988).

nal and civil liabilities, which were among the liabilities purchased by Analex. Richter argued that the legal malpractice claim could not be assigned to Analex along with the other assets acquired by Analex from Xanalex. After acknowledging that the majority of courts examining the issue have concluded that the assignability of legal malpractice claims, in general, is not permissible, the District of Columbia court concluded that "[t]he courts that have barred the assignability of legal malpractice claims have relied primarily on factors not present in this case, including the fear that parties will sell off claims, particularly to opponents or completely unrelated third parties, and a concern about jeopardizing the personal nature of legal services." *Id.* at 357. The court, in *Richter*, went on to explain that because the legal malpractice claim in the case before it "was not bartered or sold to an unrelated third party" and because Analex's liabilities, which were "assumed from Xanalex, arose directly out of [Richters] conduct," the legal malpractice claim could be assigned. *Id.* at 358. Thus, the *Richter* court concluded that "in circumstances such as these, public policy does not prohibit the assignment of a legal malpractice claim." *Id.* The *Richter* court cited with approval *Hedlund Mfg. Co. v. Weiser, Stapler & Spivak*, 517 Pa. 522, 539 A.2d 357 (1988), which involved similar factual circumstances. *Richter,* 940 F.Supp. at 357. In *Hedlund,* the court concluded that the plaintiff, which had purchased a business including the right to use and license a particular patent, could bring a legal malpractice action against the attorney who mishandled the patent application. *Hedlund,* 539 A.2d at 359.

■ Our conclusion that legal malpractice claims, transferred along with other assets and obligations to an assignee in a commercial transaction, are assignable is not only consistent with the above cases but is also consistent with our General Assembly's legislation pertaining to the Rhode Island Depositors Economic Protection Corporation (DEPCO), which appears to recognize that the assignability of a malpractice claim incident to a commercial banking transaction would not violate the public policy of this state.

In *Rhode Island Depositors Economic Protection Corp. v. Mapleroot Development Corp.,* 710 A.2d 167 (R.I.1998), we held that DEPCO acquired the attorney-client privilege along with other assets and obligations that had formerly belonged to the financial institutions it took over in the banking crisis. We concluded that when it purchased the loans of the financial institutions, it "expressly purchased all of the receiver's personal and intangible rights with respect to this borrower. Such rights would include the receiver's right to assert any attorney-client privilege that formerly belonged to" the acquired financial institution. *Id.* at 170. Presumably, if the attorney-client privilege was transferred in the acquisition of the financial institutions, so too was any right to bring a legal malpractice action against those attorneys for any negligently performed representation, assuming such negligent representation had occurred. *See, e.g.,* G.L.1956 § 42–116–12(i)(2)(iii). Thus, our conclusion that a legal malpractice claim can be assigned when transferred as part of a larger commercial transaction assignment, is consistent with our prior opinions with respect to DEPCO as well as with the caselaw of our sister states. Accordingly, we conclude that such transactions, like the one present in this case, are permitted under Rhode Island law.

With respect to the other counts dismissed by the trial justice, we conclude that the trial justice failed to adequately address the issues involved therein. There appear to be sufficient facts present in the record that could possibly, if developed further, support the various claims made in the remaining counts in the complaint and the plaintiffs are entitled to pursue those claims more fully through discovery. Accordingly, the counts in the plaintiffs' complaint asserting negligent misrepresentation and negligent omission, breach of express or implied contract, and breach of third-party beneficiary contract are reinstated along with the count for legal malpractice.

Because we conclude that the trial justice erred in finding that the plaintiffs could not maintain a legal malpractice action against Gadsby and Schatz and because as a result,

we are remanding the case to the Superior Court for further proceedings, we find it unnecessary to address whether the trial justice erred in treating Gadsby's motion to dismiss as a motion for summary judgment.

Accordingly, the plaintiffs' appeal is sustained and the judgment appealed from is vacated. The papers in this case are re- manded to the Superior Court for further proceedings consistent with this opinion.