# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 39315

| | |
|---|---|
| IN THE MATTER OF THE ORDER CERTIFYING QUESTION TO IDAHO SUPREME COURT. | ) ) ) |
| -------------------------------------------------------- | ) |
| ST. LUKE'S MAGIC VALLEY REGIONAL MEDICAL CENTER, | ) ) Boise, December 2012 Term |
| Plaintiff-Appellant, | ) ) 2013 Opinion No. 8 |
| v. | ) ) Filed: January 23, 2013 |
| THOMAS R. LUCIANI, STAMPER, RUBENS, STOCKER & SMITH, P.S., | ) ) Stephen W. Kenyon, Clerk |
| Defendants-Respondents. | ) ) |

On Order Certifying Question to Idaho Supreme Court from the U.S. District Court for the District of Idaho, Hon. Edward J. Lodge, U.S. District Judge.

In response to the certified question, the Court held that, "Where a legal malpractice claim is transferred to an assignee in a commercial transaction, along with other business assets and liabilities, such a claim is assignable."

Anderson, Julian & Hull, LLP, Boise; and Crowell & Moring, LLP, San Francisco, California, for appellant. Ethan P. Schulman argued.

Trout Jones Gledhill Fuhrman Gourley, P.A., Boise; Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, Minnesota; and Betts Patterson & Mines, P.S., Seattle, Washington, for respondents. Kay Nord Hunt argued.

_____

J. JONES, Justice.

We are asked in a certified question of law from the United States District Court for the District of Idaho (District Court) whether a legal malpractice claim that is transferred to an assignee in a commercial transaction, along with other business assets and liabilities, is assignable. We answer in the affirmative.

1

# I.
## FACTUAL AND PROCEDURAL HISTORY

Thomas R. Luciani and his law firm, Stamper, Rubens, Stocker & Smith P.S. (Luciani or Defendants), represented Magic Valley Regional Medical Center (Magic Valley) in defending a wrongful termination and False Claims Act action brought by former hospital employees (the Suter litigation).[1] During that litigation, in late December 2005 or early January 2006, Magic Valley faced an impending deadline to respond to a highly unfavorable expert report. In response to this deadline, Magic Valley decided to hire another law firm to represent it, and Luciani was terminated as counsel on or about March 14, 2006.

Before July 1, 2006, Twin Falls County owned Magic Valley. But, in March 2006, Twin Falls County (on behalf of itself and Magic Valley), Twin Falls Health Initiatives Trust, Ltd. (TFHIT), and St. Luke's Health System, Ltd., St. Luke's Regional Medical Center, Ltd., and St. Luke's Magic Valley Regional Medical Center (St. Luke's) entered into a Sale and Lease Agreement for the Creation of a New Health System (Agreement). The Agreement provided for the transfer of Magic Valley's assets[2] and liabilities to St. Luke's as follows:

> [I]t is the intent of the Parties that all property and interests of the Hospital whether real or personal, tangible or intangible, be leased, sold, assigned, licensed or transferred by [Twin Falls] County and the [Magic Valley] Subsidiaries, as applicable, to [St. Luke's] (including any rights of first refusal, options or claims against third parties by the Hospital and settlements received thereto), whether or not reflected on the Hospital's Balance Sheet and whether known or unknown, contingent or otherwise.

No specific assignment of a malpractice claim was made, but it is undisputed that St. Luke's had knowledge of the Suter litigation and its liability implications, Luciani's representation, and the decision to replace Luciani as counsel. The sale closed on July 1, 2006. St. Luke's thereafter

---

[1] Luciani disputes that Magic Valley was his client in his briefing to this Court. He contends that Twin Falls County was his client in the Suter litigation. ("Twin Falls County, the Hospital's owner during the time period of Luciani's representation of the Hospital, was Luciani's client."). But this argument plainly deviates from the question certified by the District Court, as well as the factual background presented in the District Court's Order, which stated that, "[t]he facts of this case related to this specific legal issue are not disputed by the parties. Defendants Thomas Luciani and his law firm Stamper, Rubens, Stocker & Smith, P.S. [] represented Magic Valley Regional Medical Center ('Magic Valley') to defend a wrongful termination and False Claims Act action." We do not act as a finder of fact in proceedings of this nature but rely instead on the facts presented by the United States court.

[2] Excluding hospital records St. Luke's did not reasonably need, Twin Falls County's rights under the Agreement, the sale proceeds from a parcel of real property, and certain TFHIT funds.

carried the burden of the Suter litigation, ultimately settling with the plaintiffs for $4.25 million and expending approximately $12 million in legal and expert defense expenses.

After the transaction closed, Magic Valley no longer existed. Although the transaction was not technically a merger, the operation and management of the center was taken over by St. Luke's, and the Magic Valley management team became the St. Luke's management team, with some minor changes. As the District Court put it, the "Agreement was effectively an asset and liability transfer from Magic Valley to St. Luke's."

St. Luke's sued the Defendants in January of 2008 for legal malpractice in connection with the Suter litigation, seeking approximately $10 million in damages. The Defendants moved for summary judgment, claiming among other things that St. Luke's could not pursue a malpractice claim because any purported assignment of such a claim is invalid in Idaho as a matter of law. Because the case is a diversity action, the District Court stated that Idaho law would be applied to resolve any substantive legal question. The District Court noted that the assignability of a legal malpractice claim in the factual context presented had not yet been squarely addressed by the Idaho Supreme Court and determined that the criteria for certification to this Court, pursuant to Idaho Appellate Rule 12.3, were satisfied with respect to this issue. The District Court therefore determined to certify the assignability question.

## II.
## CERTIFIED QUESTION

The question certified to the Court is "whether St. Luke's (as Luciani's former client's successor) can step into the shoes of Magic Valley for Magic Valley's legal malpractice claim against Luciani in light of the broad assignment language used in the Agreement or are legal malpractice actions not assignable in Idaho as a matter of law."

## III.
## DISCUSSION
### A. Standard of Review.

Courts of the United States may certify a controlling question of law in a pending action to the Idaho Supreme Court for determination where there is no controlling precedent in the decisions of the Idaho Supreme Court and the determination would materially advance the orderly resolution of the litigation in the United States court. I.A.R. 12.3(a). Because the sole issue here is a question of law, this Court exercises free review. *Harrigfield v. Hancock*, 140 Idaho 134, 136, 90 P.3d 884, 886 (2004). When the "question presented is a narrow one," as it is

3

here, "[o]ur role is limited to answering the certified question." *Peone v. Regulus Stud Mills, Inc.*, 113 Idaho 374, 375, 744 P.2d 102, 103 (1987) (cautioning that "to now decide [extraneous matters] would result in an advisory opinion on a question not certified"). If "the parties in their briefs and arguments before this Court present[] facts outside" the certification order, we consider "only those facts contained in the order." *Kunz v. Utah Power & Light Co.*, 117 Idaho 901, 902, 792 P.2d 926, 927 n.1 (1990).

**B. Although legal malpractice claims are generally not assignable in Idaho, where the legal malpractice claim is transferred to an assignee in a commercial transaction, along with other business assets and liabilities, such a claim is assignable.**

The District Court certified this question, observing that "Idaho courts have not specifically addressed the issue of assignability of malpractice claims." The District Court stated that this was a "narrow legal question." Without any controlling precedent to resolve this question, and because "there are public policy issues on both sides of this legal question," the District Court found certification appropriate. We agree that the question meets the certification criteria of I.A.R. 12.3.

In answering the question, St. Luke's concedes that the "majority of jurisdictions to have considered the issue articulate a general rule of non-assignability." However, it argues that this general rule only applies when the assignment is made to a stranger to the attorney–client relationship, rather than to a successor in a commercial transaction. St. Luke's contends that courts considering the situation here—where a legal malpractice claim is assigned to a successor in interest in a commercial transaction—have found an exception to the general rule, and allowed assignment. It further argues that legal malpractice claim assignment is consistent with Idaho case law, and would not implicate any of the policy concerns that courts disallowing assignment have identified. Finally, St. Luke's contends that barring assignment here would lead to the inequitable result of "allow[ing] an attorney to escape the consequences of his legal malpractice by the happenstance of a change in ownership of his corporate client."

Luciani argues in response that the attorney–client relationship in the Suter Litigation was between Luciani and Twin Falls County, not Magic Valley. That being the case, any legal malpractice claim would have to be asserted by Twin Falls County or its successors. He therefore contends that because St. Luke's did not succeed to the ownership of Twin Falls County, it cannot assert any of the county's claims. Alternatively, Luciani argues that legal malpractice

4

claims are actions based in tort, and are thus nonassignable. He also makes the related argument that because at the time of the assignment legal malpractice claims did not survive,[3] they likewise would not be assignable. Finally, Luciani cites to the majority of courts that have disallowed the assignment of legal malpractice claims, and avers that the public policy concerns at issue there apply here, namely, that assignment of legal malpractice claims undermines the attorney–client relationship, increases litigation, and diminishes the public's perception of attorneys.

The novel issue here is whether a legal malpractice claim can be assigned. Because allowing assignment in the specific context of this case is consistent with Idaho law, comports with the holding of courts that have considered this particular issue, and implicates none of the policy rationales for a general bar on malpractice claim assignments, we hold that where a legal malpractice claim is transferred to an assignee in a commercial transaction, along with other business assets and liabilities, such a claim is assignable.

It is settled in Idaho that "choses in action are generally assignable." *Purco Fleet Servs., Inc. v. Idaho State Dep't of Fin.*, 140 Idaho 121, 126, 90 P.3d 346, 351 (2004). "An assignment of the chose in action transfers to the assignee and divests the assignor of all control and right to the cause of action, and the assignee becomes the real party in interest." *Id.* Thereafter, "[o]nly the assignee may prosecute an action on the chose in action." *Id.*

In contrast to Idaho's modern rule generally allowing claim assignment, at "early common law, a chose in action arising out of a tort" could not be assigned. 6 AM. JUR. 2D *Assignments* § 53 (2012). Early Idaho case law established that actions "of a personal nature" are typically not assignable. *See MacLeod v. Stelle*, 43 Idaho 64, 249 P. 254 (1926). However, the *MacLeod* court declined to state an absolute prohibition of such assignments:

> The assignability of a cause of action is by the authorities intimately associated with, and in most cases held to depend upon, the same principle as the survival of a cause of action. Thus, if it survives, it may be assigned; if not, it may not. [] Broadly stated and referred to in *Kloepfer v. Forch*, [32 Idaho 415, 184 P. 477 (1919)] actions of a personal nature are not assignable. A long line of authorities has established this principle. Some cases have held that an injury suffered by

[3] This argument requires some context. In its brief, St. Luke's noted that the Idaho Legislature had amended I.C. § 5-327 in 2010 (2010 Idaho Sess. Laws, ch. 349, p. 911), providing for general survivability of negligence claims. I.C. § 5-327(2). Luciani's contention is that this does not reflect an Idaho public policy favoring assignability under the theory that "if it survives, it may be assigned," particularly because the legislative amendment occurred after the assignment was made in this case. However, the argument is immaterial because our decision is not affected by either the previous or amended version of I.C. § 5-327.

5

fraud, false representations, or deceit, is of such personal nature, does not survive, and is not assignable. [] The later, and to me the better considered, cases have tended toward, and many of them have reached, the conclusion that the injuries of a personal nature which do not survive are such as injury to person, malicious prosecution, false imprisonment, libel, slander, and the like; and that an injury which lessens the estate of the injured party does survive, and thus is assignable.

*Id.* at 75, 249 P. at 257 (1926). The *MacLeod* Court applied this test to fraud relating to a stock sale, and concluded that "an injury such as alleged herein does diminish the estate, is an injury to property, survives, and is assignable." *Id.*

Assignment of property-related claims is also expressly permitted by I.C. § 55-402, which provides that "[a] thing in action arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner."

Although assignment of claims is generally allowed, most courts find an exception for legal malpractice claims. This is because, "[a]s a general rule, an attorney will be held liable for negligence only to his or her client and not to someone with whom the attorney does not have an attorney–client relationship." *Harrigfeld*, 140 Idaho at 137, 90 P.3d at 887. An assignee is not a part of that relationship and, consequently, a majority of courts have identified several policy grounds for barring legal malpractice claim assignment. *See* 6 AM. JUR. 2D *Assignments* § 57 (2012) ("Most jurisdictions have held that legal malpractice claims are nonassignable."). Those policy concerns were set out in *Goodley v. Wank & Wank, Inc.*, 133 Cal. Rptr. 83 (Cal. App. 1976), where a plaintiff alleged ownership of a claim for legal malpractice arising out of advice given to a spouse in a divorce proceeding. The plaintiff was not a party to the divorce, but he claimed to have acquired his interest via written assignment. *Id.* In evaluating the assignment, the California Court of Appeals observed:

It is the unique quality of legal services, the personal nature of the attorney's duty to the client and the confidentiality of the attorney–client relationship that invoke public policy considerations in our conclusion that malpractice claims should not be subject to assignment. The assignment of such claims could relegate the legal malpractice action to the market place and convert it to a commodity to be exploited and transferred to economic bidders who have never had a professional relationship with the attorney and to whom the attorney has never owed a legal duty, and who have never had any prior connection with the assignor or his rights. The commercial aspect of assignability of choses in action arising out of legal malpractice is rife with probabilities that could only debase the legal profession. The almost certain end result of merchandizing such causes of action is the lucrative business of factoring malpractice claims which would encourage

6

unjustified lawsuits against members of the legal profession, generate an increase in legal malpractice litigation, promote champerty and force attorneys to defend themselves against strangers. The endless complications and litigious intricacies arising out of such commercial activities would place an undue burden on not only the legal profession but the already overburdened judicial system, restrict the availability of competent legal services, embarrass the attorney–client relationship and imperil the sanctity of the highly confidential and fiduciary relationship existing between attorney and client.

*Id.* at 87. Based largely on these public policy considerations, assignment of legal malpractice claims has been prohibited in the majority of jurisdictions that have considered the issue. *See* 64 A.L.R. 6th 473 §§ 6–9; *Burnison v. Johnston*, 764 N.W.2d 96 (Neb. 2009); *Jones Motor Co., Inc. v. Holtkamp, Liese, Beckemeier & Childress, P.C.*, 197 F.3d 1190, 1192 (7th Cir. 1999) (applying Illinois law); *Picadilly, Inc. v. Raikos*, 582 N.E.2d 338, 342 (Ind. 1991); *Bank IV Wichita, Nat'l Ass'n v. Arn, Mullins, Unruh, Kuhn & Wilson*, 827 P.2d 758, 765 (Kan. 1992); *MNC Credit Corp. v. Sickels*, 497 S.E.2d 331, 334 (Va. 1998); *Kiley v. Jennings, Strouss & Salmon*, 927 P.2d 796, 800 (Ariz. App. 1996); *Washington v. Fireman's Fund Ins. Co.*, 459 So.2d 1148, 1149 (Fla. App. 1984); *Christison v. Jones*, 405 N.E.2d 8, 11−12 (Ill. App. 1980); *Joos v. Drillock*, 338 N.W.2d 736, 739 (Mich. App. 1983); *Wagener v. McDonald*, 509 N.W.2d 188, 191 (Minn. App. 1993).

Despite this majority rule, courts considering the precise transaction here—a commercial transfer of a legal malpractice claim, along with other assets and liabilities, to a successor in interest—have allowed assignment. *See* 6 AM. JUR. 2D *Assignments* § 57 ("Legal malpractice claims, transferred along with other assets and obligations to an assignee in a commercial transaction, may be assignable."). For example, in *Cerberus Partners, L.P. v. Gadsby & Hannah*, 728 A.2d 1057, 1058 (R.I. 1999), a group of plaintiff financial institutions acquired loans that were made to a debtor entity that went bankrupt. The plaintiffs there argued that the attorneys representing the original lenders failed to perfect the security interests for the loans. As purchasers of the loans, they contended they were also the successors to any legal malpractice claims arising out of the transaction. *Id.* at 1057–58. The Supreme Court of Rhode Island agreed, and concluded that "legal malpractice claims, transferred along with other assets and obligations to an assignee in a commercial transaction, are assignable." *Id.* at 1061. The court reasoned that:

The legal malpractice claim asserted by the plaintiffs here arose out of a larger earlier commercial loan transaction. The plaintiffs did not merely purchase the legal malpractice claim, but were instead the assignees of the Lenders' original

agreements with respect to the loans to [the bankrupt debtor], and the plaintiffs acquired, along with those loans, all of the attendant obligations and rights that went along with those loans, including but not limited to the Lenders' legal malpractice action against the defendants.

*Id.* at 1059. And, though the court recognized that "various and plausible" public policy reasons existed for prohibiting the assignment of legal malpractice claims, it drew a "distinction between market assignments involving purely economic transactions, such as involved in the case before us, and freestanding malpractice personal injury claim assignments that necessarily involve and invoke the unique lawyer–client relationship." *Id.* at 1060. The *Cerberus* court found that the various policy evils presaged by the *Goodley* court, and other majority-rule jurisdictions, were only implicated by situations "where a legal malpractice claim was transferred to a person without any other rights or obligations being transferred along with it." *Id.* at 1059.

Other courts considering the assignment of legal malpractice claims, along with the transfer of other assets and obligations, have allowed such assignments. *See, e.g., Richter v. Analex Corp.*, 940 F.Supp 353, 357 (D.D.C. 1996) (assignment of legal malpractice claim was valid because plaintiff had purchased assets and liabilities from an entity, and because "[t]he courts that have barred the assignment of legal malpractice claims have relied primarily on factors not present in this case, including the fear that parties will sell off claims, particularly to opponents or completely unrelated third parties, and a concern about jeopardizing the personal nature of legal services"); *Hedlund Mfg. Co., Inc. v. Weiser, Stapler & Spivak*, 539 A.2d 357, 359 (Pa. 1988) (assignment of "all rights and causes of action" against attorneys relating to mishandling of patent application held valid because the court refused to "allow the concept of the attorney–client relationship to be used as a shield by an attorney to protect him or her from the consequences of legal malpractice"); *Learning Curve Intern., Inc. v. Seyfarth Shaw, LLP*, 911 N.E.2d 1073 (Ill. App. 2009); *Thurston v. Cont'l Cas. Co.*, 567 A.2d 922, 923 (Me. 1989) ("[T]here is no reason to prohibit the assignment of a legal malpractice claim [where the] assignee has an intimate connection with the underlying lawsuit.").

We agree with the foregoing authorities and hold that, while legal malpractice claims are generally not assignable, where the legal malpractice claim is transferred to an assignee in a commercial transaction, along with other business assets and liabilities, such a claim is assignable. Luciani argues that because legal malpractice is a tort—or alternatively, because it does not survive—it cannot be assigned. We disagree. For one thing, it is settled in Idaho that

8

"[l]egal malpractice actions are an amalgam of tort and contract theories." *Bishop v. Owens*, 152 Idaho 616, 620, 272 P.3d 1247, 1251 (2012). Although we held in *Bishop* that a legal malpractice claim sounding in tort does not survive the death of an injured party, we did not address the issue of assignability. *Id.* The malpractice claim here sounds in tort and, therefore, the *MacLeod* case provides some guidance. Although we stated that "if [a tort claim] survives, it may be assigned; if not, it may not," we also held that an "injury [that] lessens the estate of the injured party does survive, and that it is assignable." 43 Idaho at 75, 249 P. at 257. If personal injury claims that "diminish the estate [and are] an injury to property" may be assigned, it seems clear that personal injuries of the type alleged here—malpractice leading to an alleged loss of millions of dollars—are precisely that. *See id.* The crux of St. Luke's lawsuit against Luciani is that the alleged malpractice substantially impacted the value of the assets it acquired from Magic Valley.

Allowing an assignment in the specific context of this case would not implicate the policy concerns identified in *Goodley. See, e.g., Cerberus Partners, L.P.*, 728 A.2d at 1060. Magic Valley's malpractice claim was not assigned to a third party who "never had any prior connection with the assignor or his rights." *Goodley*, 133 Cal. Rptr. at 87. Rather than being some third-party stranger to Magic Valley, St. Luke's was closely involved in the Suter litigation, assumed its defense, litigated it, and settled it—long after Magic Valley ceased to exist. And, St. Luke's acquisition of the claim was not an isolated purchase made in a "marketplace for legal malpractice claims"—it was one component of a sale that transferred the bulk of Magic Valley's assets and liabilities, its medical center operation, and even its management team, to St. Luke's. Thus, far from being an arms-length bidder, St. Luke's was intimately connected to the litigation leading to the claim, and did little to restructure the hospital after acquiring it, beyond changing its name. It thus makes sense to treat St. Luke's as Magic Valley's successor, and not a stranger, when assessing the propriety of the assignment. Logically, given that St. Luke's assumed the obligations under the Suter litigation, it certainly should have the rights attendant to that assumption—which would include the right to recoup any malpractice losses that impacted the value of the consideration it received under the Agreement.

Luciani provides no compelling reason why allowing assignment in this case would undermine the attorney–client relationship, or increase litigation. The cases he proffers concern

assignments to strangers, or former adversaries in litigation, as opposed to successors.[4] And, there is no reason to think that allowing assignment here would impact negatively on the public's perception of the legal profession, or "debase the legal profession." *Goodley*, 133 Cal. Rptr. at 87. Indeed, just the opposite seems more likely—that *prohibiting* such assignments would diminish the public's perception of attorneys. Magic Valley no longer exists to enforce this malpractice claim and, without a valid assignment, neither could any other entity enforce it. St. Luke's points out that the mere "fortuity" of this change in corporate ownership would mean that Luciani could "entirely escape liability" for any alleged malpractice. And in an era of ever-increasing corporate restructuring, it is hard to imagine that this Court, bestowing such a lucky break to attorneys, while leaving clients without recourse, would lead to any public perception except favoritism. In other words, forbidding assignment here would likely lead to the "very real concern" identified by Justice Horton in his dissent in *Bishop*—that a "decision of this Court will reinforce the perception, shared by many in our society, that courts will go out of their way in order to protect members of the bar." *Bishop*, 152 Idaho at 626, 272 P.3d at 1257. We, therefore, find that there are no public policy concerns disfavoring the assignment of a legal malpractice claim in the context of this case.

Based on the rationale set out by this Court in *MacLeod* and upon I.C. § 55-402, we hold that where a legal malpractice claim is transferred to an assignee in a commercial transaction, along with other business assets and liabilities, such a claim is assignable.

## IV.
## CONCLUSION

Based on the facts posited by the United States District Court, we answer the certified question as follows: "St. Luke's can step into the shoes of Magic Valley for Magic Valley's legal malpractice claim against Luciani."

Chief Justice BURDICK, and Justices EISMANN and HORTON, and Justice Pro Tem KIDWELL CONCUR.

---

[4] *See, e.g., Goodley*, 133 Cal. Rptr. 83 (assignee was a stranger to the original divorce litigation); *Raikos*, 582 N.E.2d 338 (assignment was to a former adversary in litigation); *Rosby Corp. v. Townsend, Yosha, Cline & Price*, 800 N.E.2d 661, 663, 667 (Ind. App. 2003) (where assignee was a creditor in bankruptcy, and the court implied that had the claim been "assigned to a successor corporation, which was a direct continuation of its predecessor," the assignment would have been allowed); *Moorhouse v. Ambassador Ins. Co., Inc.*, 383 N.W.2d 219, 220 (Mich. App. 1985) (assignor was judgment-proof former adversary in litigation).