**JEFFERSON HEALTH SERVICES,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (PARADIS),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 14, 2000.
Decided Feb. 29, 2000.

McGINLEY, Judge.

Jefferson Health Services (Employer) seeks review of the order of the Workers' Compensation Appeal Board (Board) which affirmed the Workers' Compensation Judge (WCJ) who denied termination and granted subrogation.

Employer challenged the subrogation on the ground that a determination in a prior proceeding precluded the WCJ from finding that the injury at issue was work-related.

Twila Paradis (Claimant) sustained a work-related injury on September 26, 1994. A notice of compensable payable (NCP) described the injury as a "meniscus tear versus cartilaginous loose body, right knee." NCP, November 7, 1994; Reproduced Record (R.R.) at 61a. Employer sought a termination/suspension on July 2, 1995. Subsequently, the parties entered into a stipulation which stated that, *"the injury did not extend to the right ankle."* (Emphasis added.) Stipulation, August 8, 1997; Appendix A at 9–10. The WCJ adopted the stipulation and suspended benefits, effective July 31, 1996. Decision of the WCJ, September 16, 1997 (First WCJ Decision); Appendix A at 1–7. Intervenor, Capital Blue Cross (Blue Cross) was not a party to the stipulation.[1]

Pending a resolution of the July 2, 1995, petition, Employer filed a second termination petition and requested a supersedeas on September 2, 1997.[2] Petition to Terminate Compensation, September 2, 1997; R.R. at 3a–4a. Claimant denied that she could return to her time-of-injury job without restrictions.

On February 6, 1998, the WCJ issued an interlocutory order and granted Blue Cross' petition to intervene. Employer

Dale A. Cable, Pittsburgh, for petitioner.

Paul J. Gitnik, Pittsburgh, for respondent.

Before COLINS, J., McGINLEY, J., and JIULIANTE, Senior Judge.

1. Blue Cross is a non-profit hospital plan which provided health benefits coverage to Claimant in the amount of $5,418.33, part of which was for treatment of the right ankle, pursuant to a group contract with the Pennsylvania Employees Benefit Trust Plan (PEBTF). Explanation of Benefits, March 12, 1998; R.R. at 211a–213a.

2. The supersedeas was denied by order of the WCJ, on December 4, 1997.

did not oppose Blue Cross' intervention. *Interim/Interlocutory Order of the WCJ,* February 6, 1998; Supplemental Reproduced Record (S.R.R.) at 1b–3b.

Employer presented the testimony of H. Andrew Wissinger, M.D. (Dr. Wissinger), a board-certified orthopedic surgeon, who examined Claimant in February 1996, and on August 21, 1997. Dr. Wissinger opined that Claimant could return to her previous occupation as a registered nurse without restrictions. Deposition of H. Andrew Wissinger, November 14, 1997 (Dr. Wissinger Deposition) at 9; R.R. at 364a. Dr. Wissinger stated that Claimant sustained coronal instability of her right knee and that a degenerative arthritic condition of the right ankle "was exacerbated by the work injury of September 26, 1994, necessitating arthroscopic debridement." Dr. Wissinger Deposition at 5; R.R. at 360a.

Claimant testified that she underwent arthroscopic surgery to her right knee and later had two operations to her right ankle, in 1995 and 1997, that she continues to suffer pain in her right knee and right ankle and that occasionally her right leg suddenly gives out. Notes of Testimony (N.T.), November 24, 1997 at 8–17; R.R. at 261a–270a. Claimant stated that she is unable to avoid falling without the use of a knee brace or a cane. Notes of Testimony, July 13, 1998 at 42; R.R. at 344a.

Claimant presented the testimony of Eric Minde, M.D. (Dr. Minde), a board-certified physiatrist, who reviewed the medical history and examined Claimant on December 3, 1997, and March 18, 1998. Dr. Minde agreed with Dr. Wissinger that Claimant's condition with respect to both the knee and the ankle was related to the work-injury of 1994, and that she had coronal instability of the right knee. Deposition of Eric Minde, M.D., April 1, 1998 (Dr. Minde Deposition) at 11–12, 20–23; R.R. at 404a–405a, 413a–416a. Dr. Minde also stated that Claimant sustained a genuvalgum which he described as a misalignment of the right leg which required support for balance and stability. Dr. Minde Deposition at 16–18; R.R. at 409a–411a. Dr. Minde opined within a reasonable degree of medical certainty that Claimant could not return to work. Dr. Minde Deposition at 21; R.R. at 414a.

Blue Cross presented medical bills and hospital records in support of its demand for subrogation for treatment of Claimant's right ankle in 1995 pursuant to its agreement with PEBTF. Explanation of Benefits and Medical Records, March 12, 1998; R.R. at 211a–253a. The parties agreed to exchange medical records. N.T., March 12, 1998 at 3–13; R.R. at 291a–301a.

The WCJ determined:

10. It is to be noted that employer and employee [Claimant] in this case sought to "stipulate" that the claimant's right ankle was not reflective of a work related injury. However the subrogee, Capital Blue Cross, did *not* make any such stipulation.

. . . .

17(a). The claimant was not, as alleged, fully recovered from her work-related injury on August 21, 1997, or on any other date.

In so finding, this adjucator [sic] has credited the testimony of the claimant that she continues to have impairment and instability in her right knee.

. . . .

In so finding, this adjudicator has credited the testimony of Dr. Minde. This adjudicator notes the doctor's qualifications as a board-certified podiatrist [sic]. He carefully explained why he thought the claimant could not work as a registered nurse, being on her feet all day . . . .

This adjudicator has not credited Dr. Wissinger to the extent that he says claimant is fully recovered. The doctor *is* credited when he says the claimant has the continued objective sign of coronal instability.

17(b). Despite the stipulation of employer and claimant to the contrary, the credible medical evidence shows the claimant did, indeed, suffer an aggravation of pre-existing degenerative arthritis in her right ankle when she had her injury of September 26, 1994. Dr. Wissinger is credited to this extent (he has not been credited when he says she is fully recovered from this problem).

17(c). All the billings paid by the subrogee, Blue Cross, are for medical treatments causally related to the work-injury. Dr. Wissinger has been credited. The hospital records submitted by the subrogee, similarly, are found persuasive and reliable. ( Emphases in original.)

Decision of the WCJ, September 4, 1998 (Final WCJ Decision), Findings of Fact, Nos. 10, 17 at 4, 7–8; R.R. at 14a, 17a–18a.

The WCJ concluded:

3. The present matter is treated by this adjucator [sic] as a petition to review the description of injury. Section 413(a) of the Act,[3] 77 P.S. § 771. The NCP is hereby corrected to list the additional injury, "aggravation, degenerative arthritis right ankle."

4. The subrogee, Capitol Blue Cross, has met the burden of proof required to demonstrate relief on its petition seeking reimbursement.

. . . .

8. A workers' compensation judge is not bound by a stipulation which is not supported by any evidence; and, indeed, contrary to the believable evidence. Further the stipulation in the present case is not "fair and equitable to the parties," as Blue Cross is a party and would be highly prejudiced by the stipulation in this case. 34 Pa.Code § 131.91(b)(1).

Final WCJ Decision, Conclusions of Law, Nos. 3, 4, 8 at 8; R.R. at 18a. The Board affirmed.

The only issue presented for our review is whether the First WCJ Decision adopting the stipulation of facts between Employer and Claimant precludes a subsequent contrary determination by the WCJ.[4]

Section 413 of the Act, 77 P.S. § 771, provides:

A referee [WCJ] of the department may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such referee [WCJ], if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

Additionally, Section 131.91(b) of the Special Rules Before Referees,[5] 34 Pa. Code § 131.91(b) (relating to stipulations of fact), provides that a WCJ may issue a decision based on stipulations of fact, if satisfied that, "the stipulations of fact are fair and equitable to the parties involved." Here, the WCJ determined that the stipulation was prejudicial to Blue Cross.

This Court has stated that a stipulation of facts is no more that an agreement approved by the WCJ and cannot be accorded *res judicata. Spears v. Workmen's Compensation Appeal Board (Newman and Company, Inc.),* 85 Pa.Cmwlth. 346, 481 A.2d 1244 (1984). In *Spears,* the WCJ

---

3. The Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

4. Our review is limited to a determination of whether constitutional rights have been violated, whether an error of law has been committed and whether all necessary findings of fact are supported by substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services),* 133 Pa. Cmwlth. 455, 576 A.2d 1163 (1990).

5. Referees are now called Workers' Compensation Judges under the new amendments to Section 401 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736 *as amended,* 77 P.S. § 701. *See* Section 14, Act 44, Act of July 2, 1993, P.L. 190.

predicated his findings on a stipulation regarding the state of the claimant's disability which was later determined to be patently false. This Court held that the prior WCJ's decision was of little or no consequence and void. *Id.* at 1246. In *Spears,* as here, the WCJ's first decision was not based upon independent findings but was merely approved as a supplemental agreement.

■ Because there was no adversarial proceeding leading up to the First WCJ Decision, but merely an adoption of stipulated facts between Employer and Claimant, and because the First WCJ Decision was not an arms length determination and Blue Cross was not a party to the stipulation, the WCJ was free to make a determination on all the evidence presented.[6] *See Bureau of Workers' Compensation v. Workers' Compensation Appeal Board (Bethlehem Steel Corp.),* 723 A.2d 1061 (Pa.Cmwlth.1998).

■ The right to subrogation derives from equitable principles. *Lamberson v. Workmen's Compensation Appeal Board (U.S.Silica),* 654 A.2d 668 (Pa.Cmwlth.

1995). Section 319 of the Act, 77 P.S. § 671, provides that an "employer or insurance company who made the payments shall be subrogated ... if the right to subrogation is agreed by the parties or is established at the time of hearing before the referee [WCJ] or the Board." Because Blue Cross properly asserted its claim and the WCJ determined that the injury to Claimant's right ankle was work-related, Blue Cross was entitled to subrogation to the medical costs it incurred for the work-related injury to the right ankle.

Accordingly, we affirm.

### ORDER

AND NOW, this 29th day of February, 2000, the order of the Workers' Compensation Appeal Board at the above captioned matter is affirmed.

---

**6.** Because the determination by the WCJ as to his findings of facts in the Final WCJ Decision has not been challenged, we will not review those findings.