# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 49788

KERRY ANGELOS, an individual, )
)
  Plaintiff-Appellant, )
)
and )
)
GREG SCHATZEL, as successor in interest to )
KERRY ANGELOS, an individual, )
)
  Plaintiff, )
)
v. )
)
GREG SCHATZEL and SUSAN SCHATZEL, )
husband and wife; RICHARD J. PINEDA, an )
individual; FRED J. PINEDA, an individual, )
)
  Defendants-Respondents, )
)
and )
)
DOES 1 through 10, inclusive, )
)
  Defendants. )

Boise, June 2024 Term

Opinion filed: August 16, 2024

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Patrick J. Miller, District Judge.

The judgment of the district court is <u>vacated</u> and <u>remanded</u>.

McConnell Wagner Sykes & Stacey, PLLC, Boise, and The Schafer Law Firm, PC, San Juan Capistrano, California, for Appellant. Jeffrey R. Sykes argued.

McCarthy & Holthus, LLP, Boise; Garrett Richardson PLLC, Eagle; and Thomas Schatzel, Esq., Los Gatos, California, for Respondents. David M. Swartley argued.

_____

MOELLER, Justice.

This appeal addresses whether an alleged tortfeasor can purchase a plaintiff-debtor's interests in a defamation lawsuit in order to gain control of both sides of the action and extinguish

1

the claim. Kerry Angelos brought a defamation lawsuit against Greg and Susan Schatzel alleging that they created a website that published defamatory comments about Angelos from purported third-parties. However, during the course of the lawsuit, Angelos suffered financial setbacks and his interests in the action were auctioned at a sheriff's sale to satisfy a preexisting judgment held by a third party. Greg Schatzel was the highest bidder at the auction. After purchasing Angelos's interest in the defamation action, Schatzel substituted himself as party plaintiff and stipulated with the other defendants to dismiss the action with prejudice.

Angelos appealed, arguing that unlike most choses in action, his defamation claims are so personal to him that they cannot be deemed "property" subject to execution under Idaho Code section 11-201. For the reasons discussed below, we agree and vacate the district court's order granting Schatzel's motion to substitute under Idaho Rule of Civil Procedure 25(c).

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The First Defamation Lawsuit and Angelos's Bankruptcy

The proceedings that led to this appeal are the latest chapter in a long-running personal feud between Angelos and the Schatzels. Angelos operates a real estate business in the home construction industry, known as Status Corporation. Greg and Susan Schatzel, husband and wife (the "Schatzels"), purchased real estate from Status Corporation in 2007. However, they lost money in the deal when Status Corporation refused to exercise its buy-back option as real estate values declined over the next two years. To this day, Angelos alleges this real estate deal caused the Schatzels to hold a "grudge" that resulted in their developing a "retaliatory animus" against him.

On February 15, 2009, Greg Schatzel ("Schatzel") registered the domain www.kerryangelos.com (hereinafter, the "Website") without Angelos's permission. In a deposition, Schatzel explained that he set up the Website to make Angelos's "long history of lawsuits and judgments," "more public" and "accessible" and to create a place for people "wanting help or to help others with problems with Kerry [Angelos]." Schatzel stated that third parties would email him with comments they wanted published on the Website, and he would post them "verbatim." Angelos claims that the Website included many false and defamatory statements concerning Angelos's real estate business, prior civil litigation, bankruptcies, and numerous comments by "purported third parties," including the false assertions that Angelos is a "conman" and a convicted criminal.

2

On November 2, 2009, Angelos filed a defamation suit against the Schatzels. The complaint listed claims for libel per se, invasion of privacy (false light), invasion of privacy (appropriation of Angelos's name or likeness for Schatzel's advantage), and intentional infliction of emotional distress. Angelos won partial summary judgment with the district court on the claim for libel per se. The district court also granted injunctive relief by requiring the defendants to remove inaccuracies, and then either take the Website offline or leave the corrected Website unchanged. However, the lawsuit went inactive when Angelos voluntarily filed Chapter 7 bankruptcy on April 29, 2011. It was about this time that Schatzel alleges he sold the Website to an unknown third party because he just wanted to "get rid of it" to an interested buyer.

About a year after filing bankruptcy, the federal court entered a monetary judgment against Angelos for Rexius Forest By-Products, Inc. ("Rexius Forest"). According to Angelos, the "Rexius Judgment" stemmed "from a disputed real estate project that started before the pre-2007 real estate bubble collapse and then failed." Angelos's remaining debts were discharged in bankruptcy on September 11, 2012. However, when Angelos failed to continue to pursue his lawsuit against the Schatzels, the district court dismissed the action with prejudice in 2016 for failure to prosecute.

**B. The Second Defamation Lawsuit and the Sheriff's Sales**

Between 2016 and 2017, the Schatzels changed the design of the Website. New text and a countdown clock were added to the homepage, with the clock purporting to "count down the time until Angelos could file for a theoretical future bankruptcy." Two separate events related to Angelos's debts or monetary judgments occurred about this same time. First, on September 5, 2017, Rexius Forest renewed its monetary judgment from the earlier proceedings in the United States Bankruptcy Court for the District of Idaho. The Rexius Forest Judgment was then domesticated in Ada County (Case No. CV01-18-6238) with Michael Smith as successor in interest. Second, on October 15, 2018, Angelos executed a promissory note in favor of Pacific Global Investment, Inc., ("PGI") for $350,000.

Due to the changes on the Website, Angelos filed a new defamation action in Idaho's Fourth Judicial District against the Schatzels on May 8, 2020. A few months later, Angelos filed an amended complaint that added Richard J. Pineda to the list of defendants. A second amended complaint followed that added Fred Pineda as a defendant. The Pinedas are Susan Schatzel's sons and Greg Schatzel's stepsons. Angelos alleges that the Schatzels asked Richard and Fred Pineda to create the original Website, and that they have since conspired with them to fashion a "sham"

3

sale of it so that Fred Pineda can operate and manage the Website under the Schatzels' continued direction. Ownership and administrative control of the Website remains disputed.

When Angelos filed his second amended complaint, the pleading listed 12 causes of action under state and federal law for defaming Angelos, misusing his personal name, and engaging in outrageous conduct to inflict emotional distress. Specifically, Angelos pleaded libel per se, libel, violation of the Idaho Consumer Protection Act, invasion of privacy (false light), misappropriation of name, tortious interference with a prospective economic advantage, violation of the Idaho Competition Act, trademark infringement and unfair competition, bad faith cybersquatting, unfair competition under the Lanham Act, cyberpiracy, intentional infliction of emotional distress, and intentional interference with a prospective civil action by spoliation of evidence. He also requested injunctive relief to shut down the Website and reassign the domain name (www.kerryangelos.com) to Angelos.

The litigation proceeded through a long series of filings, culminating in a motion for summary judgment filed by the Schatzels and the Pinedas on all of Angelos's claims. Before a ruling was made, two sheriff's sales occurred—one of which directly impacted the underlying litigation and became the basis of this appeal. First, a third-party judgment creditor, Vintage Lionwood, LLC ("Vintage Lionwood"), pursued execution on a preexisting judgment.[1] However, on June 24, 2021, Angelos's interests in the underlying defamation action were auctioned at a sheriff's sale pursuant to a writ of execution. As the highest bidder, Angelos was able to preserve his right to pursue his lawsuit against the Schatzels and Pinedas. He purchased his rights for $106,661.40. Thereafter, Vintage Lionwood filed a notice of satisfaction of judgment.

The second sheriff's sale soon followed to satisfy another judgment creditor. The sheriff's office once again levied Angelos's interests in his defamation lawsuit against the Schatzels and Pinedas, this time to satisfy the Rexius Forest Judgment held by Michael Smith as successor in interest. The sheriff issued a notice of sale that specified the sale of "personal property," as follows:

> All rights, title and interest held by KERRY ANGELOS, an individual, in Case No. CV01-20-07472 filed in the Fourth Judicial District of the State of Idaho, in and for the County of Ada, entitled *Kerry Angelos, an individual, vs. Greg Schatzel and Susan Schatzel; Does 1 through 10; Richard Pineda; Fred Pineda*, filed on May 8, 2020 whether pursuant to a Certificate of Sale for Personal Property Sold Under

---

[1] It is unclear from the record whether Vintage Lionwood obtained a monetary judgment against Angelos from the 2011 bankruptcy proceedings or in a separate lawsuit.

Second Writ of Execution entered on June 24, 2021 in Case CV01-17-16398 or otherwise.

This time, Greg Schatzel was the high bidder at the auction on October 28, 2021, purchasing Angelos's rights, title and interest in the underlying lawsuit, Case No. CV01-20-07472, for $70,000.

Following the second sheriff's sale, Schatzel filed a motion to substitute himself as party plaintiff and "successor in interest to Kerry Angelos," pursuant to Idaho Code section 11-309 and Idaho Rule of Civil Procedure 25(a)(1) and 25(c). Angelos filed a memorandum in opposition. He argued that permitting Schatzel to substitute posed a substantial risk to allow republication of the defamatory Website and would "leave [Angelos] at the mercy of Schatzel indefinitely" where his future interests in lawsuits could be sold again and again, particularly while Angelos's ability to repay his debts continued to be harmed by Schatzel's defamation.

About this time, a third creditor entered the picture: PGI and its president, Vic Devlaeminck (collectively "PGI"). PGI filed a motion to intervene in the defamation lawsuit, arguing that they had a perfected interest in the action and priority over Schatzel to become the party plaintiff. To support their motion, PGI pointed to a security agreement they entered into with Angelos on October 28, 2020—nearly six months after Angelos filed his complaint—for collateral to secure the earlier promissory note of $350,000. In their motion before the district court, PGI contended that they should be allowed to intervene and become the party plaintiff in the case to assume prosecution of the causes of action listed in the complaint. Schatzel objected to the motion, arguing that PGI failed to meet the standards for intervention as set forth in Idaho Rule of Civil Procedure 24.

The district court heard oral arguments on all pending motions. It later issued an order granting Schatzel's motion to substitute and denying PGI's motion to intervene. On the motion to substitute, the district court "[did] not find a basis in controlling law to support Angelos' contentions" that the sheriff's sale was invalid, or that Schatzel's substitution would violate either Idaho public policy or the open courts doctrine. Thus, Schatzel was permitted to substitute as the plaintiff while PGI and Devlaeminck were barred from intervening in the action.

Greg Schatzel—as successor in interest to Angelos—filed a stipulated motion on behalf of himself, Susan Schatzel, and the Pinedas to dismiss the lawsuit with prejudice. The district court granted the stipulation, and dismissed the case with prejudice, ordering all parties to bear their respective attorney fees and costs. Angelos timely appealed, as did PGI . PGI's appeal is laid out

in a companion case: *Angelos v. Schatzel*, Dkt. No. 49787. Greg Schatzel, as the newly substituted plaintiff in the action, filed a motion before this Court to dismiss the two appeals of the non-parties Angelos and PGI. The motion was joined by the defendants: the Schatzels and the Pinedas. This Court denied the motion.

## II. STANDARDS OF REVIEW

Whether to grant a motion to substitute as a party plaintiff pursuant to Idaho Rule of Civil Procedure 25(c) is a discretionary decision of the district court. *See Rodriguez v. Oakley Valley Stone, Inc.*, 120 Idaho 370, 377, 816 P.2d 326, 333 (1991). In reviewing for an abuse of discretion, this Court examines whether the trial court "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). Questions of law, however, receive de novo review from this Court, including issues of statutory interpretation. *Datum Constr., LLC v. RE Inv. Co.*, 173 Idaho 159, ____, 540 P.3d 330, 333 (2023).

## III. ANALYSIS

### A. Angelos's argument on appeal is sufficient to permit review.

Before addressing the merits of this appeal, we must first turn to a dispute concerning the alleged failure of Angelos to comply with the applicable standard of review. The Schatzels contend that Angelos's argument is fatally deficient for presenting a conclusory argument that fails to articulate the specific error of the district court. We conclude that the Schatzels' argument is misplaced.

The standard of review in every case is important because it is "[t]he lens through which this Court views each particular appeal . . . ." *Est. of Ekic v. Geico Indem. Co.*, 163 Idaho 895, 897, 422 P.3d 1101, 1103 (2018). As noted above, the question of whether to grant a motion to substitute under Rule 25(c) is a discretionary one. *Rodriguez v. Oakley Valley Stone, Inc.*, 120 Idaho 370, 377, 816 P.2d 326, 333 (1991). We have previously held that where an appellant makes conclusory arguments and fails to articulate how the district court abused its discretion in reaching its decision, the error may be fatal to the appeal. *See Est. of Ekic*, 163 Idaho at 899, 422 P.3d at 1105; *State v. Kralovec*, 161 Idaho 569, 575 n.2, 388 P.3d 583, 589 n.2 (2017); *Cummings v. Stephens*, 160 Idaho 847, 853, 380 P.3d 168, 174 (2016). However, we do not "impose a 'formalistic requirement that the standard of review be recited and the party claiming error attack

6

a particular prong of that standard of review.' " *Tech Landing, LLC v. JLH Ventures, LLC*, 168 Idaho 482, 487, 483 P.3d 1025, 1030 (2021) (quoting *State v. Jeske*, 164 Idaho 862, 869, 436 P.3d 683, 690 (2019); then citing *Kralovec*, 161 Idaho at 575 n. 2, 388 P.3d at 589 n.2).

While we continue to hold that we will not consider assignments of error unsupported by argument and authority, *Kralovec*, 161 Idaho at 575 n.2, 388 P.3d at 589 n.2, we do not agree that Angelos's appeal is fatally deficient under this standard. Angelos's arguments on appeal are not mere conclusory arguments that fail to articulate the specific errors of the district court. Indeed, Angelos has raised an important question of statutory construction to protect his rights in his underlying litigation and has alleged that the district court erred in its "application and interpretation of the law." While Angelos's briefing should have more specifically articulated under which of the four prongs the court abused its discretion for granting Schatzel's motion to substitute, his arguments directly attack the district court's application of the legal standards governing the sale of his chose in action. Because Angelos satisfied the third prong of *Lunneborg*—whether the trial court "acted consistently with the legal standards applicable to the specific choices available to it"—we do not agree with Schatzel that Angelos's "formalistic failures" are fatal to his claims. *Lunneborg,* 163 Idaho at 863, 421 P.3d at 194.

**B. Defamation is not an assignable claim in Idaho.**

Angelos first argues that the district court erred in its summary judgment ruling by concluding as a matter of law that Angelos's causes of action were "other property" assignable under Idaho Code section 11-201. Citing *MacLeod v. Stelle*, 43 Idaho 64, 249 P. 254 (1926), Angelos contends that his lawsuit is not "other property" because "other property" cannot include injunctive relief, personal tort claims, fundamental privacy rights, or Angelos's federal causes of action. Based on the holding in *MacLeod*, Angelos argues that his tort claims are so personal to him that they cannot be deemed "property" subject to execution under Idaho Code section 11-201. The Schatzels respond that the Idaho Supreme Court has not carved out an injunctive relief or tort exception for choses in action. The district court concluded that substitution under Idaho Rule of Civil Procedure 25(c) was warranted because Schatzel purchased all rights, title, and interest held by Angelos in the underlying litigation and became the real party in interest.

This case asks whether the language "other property," as contained in Idaho Code sections 11-201 and 11-301, encompasses Angelos's unliquidated defamation action—a personal claim in tort—and renders his chose in action subject to execution. The word "chose" is a legal term

7

originating from the French language that translates to "a thing," with a "chose" equating to "chattel personal" in modern legal usage. *Chose*, Garner's Dictionary of Legal Usage (3rd ed. 2011). Traditionally, choses are one of two kinds: "*[c]hoses in possession* are tangible goods capable of being actually possessed and enjoyed," while "*choses in action* are rights that can be enforced by legal action." *Id.* (emphasis added). Black's Law Dictionary defines "chose in action" as:

> 1. A proprietary right in personam, such as a debt owed by another person, a share in a joint-stock company, or a claim for damages in tort. 2. The right to bring an action to recover a debt, money, or thing. 3. Personal property that one person owns but another person possesses, the owner being able to regain possession through a lawsuit.

*Chose*, BLACK'S LAW DICTIONARY (11th ed. 2019). A "chose in action" can also be termed a "right in action." *Id.*

"Where made so by statute, a chose in action is personal property subject to a writ of execution." 30 Am. Jur. 2d *Executions, Etc.* § 133 (May 2024 update). "Thus, a cause of action in existence prior to a judgment is personal property upon which a judgment creditor may seek execution." *Id.* Title 11 of the Idaho Code governs sheriff sales and allows for the judgment creditor to be compensated "while simultaneously protecting the judgment debtor from overreaching." *Safaris Unlimited, LLC v. Von Jones*, 163 Idaho 874, 884, 421 P.3d 205, 215 (2018) (hereinafter, "*Safaris II*"). Idaho Code section 11-201 specifically "permits the judgment creditor to execute on all non-exempt personal and real property of the judgment debtor." *Id.* The statute dates back to Idaho's territorial period, and was first enacted in 1881. C.C.P. § 437 (1881). It states:

> All goods, chattels, moneys and *other property*, both real and personal, or any interest therein of the judgment debtor, not exempt by law or by court order, and all property and rights of property, seized and held under attachment in the action, are liable to execution. Shares and interest in any corporation or company, and debts and credits, and all other property both real and personal, or any interest in either real or personal property, and all other property not capable of manual delivery, may be attached on execution in like manner as upon writs of attachment. Gold dust must be returned by the officer as so much money collected, at its current value, without exposing the same to sale. Until a levy, property is not affected by the execution.

I.C. § 11-201 (emphasis added). Idaho Code section 11-301 is similarly broad and requires the sheriff to

> execute the writ against the property of the judgment debtor by levying on a sufficient amount of property if there be sufficient; collecting or selling *the things*

*in action*, and selling the *other property*, and paying to the plaintiff or his attorney so much of the proceeds as will satisfy the judgment.

(Emphasis added).

We have already determined that "Title 11 does not differentiate between liquidated and unliquidated claims; nor does Title 11 preclude executing on unliquidated claims." *Safaris II*, 163 Idaho at 886, 421 P.3d at 217. *Safaris II* broadly interpreted Idaho Code section 11-201 and authorized execution upon unliquidated claims under the statute. *Id.* Idaho law also "recognizes that choses in action are generally assignable." *Purco Fleet Servs., Inc. v. Idaho State Dep't of Fin.*, 140 Idaho 121, 126, 90 P.3d 346, 351 (2004). Where "[a]n assignment of the chose in action transfers to the assignee and divests the assignor of all control and right to the cause of action, . . . the assignee becomes the real party in interest." *Id.* Then the assignee is the only party that "may prosecute an action on the chose in action." *Id.* However, *Safaris II* authorized execution upon a commercial lawsuit pending against a third party. 163 Idaho at 886, 421 P.3d at 217. It did not directly contemplate unliquidated tort claims, and instead left that question for another day. *Id.* at 886 n.7, 421 P.3d at 217 n.7 (citing *Snow, Nuffer, Engstrom & Drake v. Tanasse*, 980 P.2d 208, 210–11 (Utah 1999)). While Schatzel contends that *Safaris II* controls this case, this Court addressed certain exceptions to what constitutes "other property" under Idaho Code sections 11-201 and 11-301 long before *Safaris II* came before us.

More than a hundred years ago, the Idaho Supreme Court recognized that the "right to sue for an injury is a right of action—it is a thing in action, and is property." *Muir v. City of Pocatello*, 36 Idaho 532, 540, 212 P. 345, 347 (1922). Just four years later, this Court also held that actions "of a personal nature" are generally not assignable. *MacLeod v. Stelle*, 43 Idaho 64, 75, 249 P. 254, 257 (1926). This principle was based on the premise that the assignability of a cause of action is "intimately associated with, and in most cases held to depend upon, the same principle as the survival of a cause of action." *Id.* (citing Idaho Comp. Stat. § 6652, which governed actions not to abate on death or transfer of interest). In *MacLeod*, the plaintiff filed a lawsuit after being induced to purchase stock under false and fraudulent representations, and argued "31 other alleged causes of action" that originated with the plaintiff's assignors. *Id.* at 69, 249 P. at 255. The respondent filed a demurrer for "defect of parties," arguing that the additional causes of action were not assignable and the plaintiff was not the real party in interest. *Id.*

On appeal, this Court explained that "to determine the assignability of the cause of action, it is necessary to look to the form of the action and the relief asked." *Id.* at 74, 249 P. at 257. Causes

9

of action that are considered "injuries of a personal nature" and did not survive included "injury to person, malicious prosecution, false imprisonment, *libel, slander,* and the like;" while "an injury which lessens the estate of the injured party does survive, and thus is assignable." *Id.* at 75, 249 P. at 257 (emphasis added). In other words, the question turned on whether the claim was one that survived death or transfer of interest. *Id.* (citing Idaho Comp. Stat. § 6652). This Court noted that it was not called upon to determine whether the plaintiff would rescind, and base his action in the torts of fraud and deceit, or affirm the contract and sue for damages. *Id.* at 76, 249 P. at 257. Instead, it concluded that "the actions herein are for injury to property, survive, and were thus assignable, and may be joined, as for injury to property," under Idaho's Compiled Statutes. *Id.* (citing Idaho Comp. Stat. § 6652).

The holding in *MacLeod* has been applied more recently when addressing whether a legal malpractice claim could be assigned through a commercial transaction. *St. Luke's Magic Valley Reg'l Med. Ctr. v. Luciani*, 154 Idaho 37, 41, 293 P.3d 661, 665 (2013). In *Luciani*, there was a sale and lease agreement for the creation of a new health system in Twin Falls County that transferred "all property and interests" of Magic Valley Regional Medical Center to St. Luke's Health System, Ltd. *Id.* at 39, 293 P.3d at 663. The agreement was effectively "an asset and liability transfer" much like a merger. *Id.* At the time of the transfer, the hospital was in the midst of federal litigation and had recently terminated its legal counsel in the lawsuit. *See id.* The hospital had to obtain new representation to respond to an imminent deadline. *Id.* With the transfer, St. Luke's took over the litigation and, following the case's eventual settlement, sued the terminated legal counsel for malpractice in federal court. *Id.* St. Luke's sought $10 million in damages. *Id.* The defendants moved for summary judgment, arguing that the assignment of a malpractice claim is invalid in Idaho as a matter of law. *Id.* As a controlling question of law, the question was certified to this Court by the United States District Court for the District of Idaho. *Id.* at 38, 293 P.3d at 662.

On answering the certified question, this Court ultimately determined that legal malpractice claims are not generally assignable, but can be assigned where the claim "is transferred to an assignee in a commercial transaction, along with other business assets and liabilities." *Id.* at 40, 293 P.3d at 664. We looked to *MacLeod* and public policy considerations in reaching our decision. While recognizing that choses in action are generally assignable in Idaho, we reiterated the *MacLeod* holding that "actions 'of a personal nature' are typically not assignable." *Id.* at 41, 293 P.3d at 665 (quoting *MacLeod*, 43 Idaho at 75, 249 P. at 257). This Court applied *MacLeod*'s test,

concluding that while a malpractice suit is an "amalgam of tort and contract theories," "[t]he crux of St. Luke's lawsuit against Luciani is that the alleged malpractice substantially impacted the value of the assets it acquired from Magic Valley." *Id.* at 43, 293 P.3d at 667. Thus, while "sound[ing] in tort," the claim was one that "diminish[ed] the estate" and injured property, rendering it assignable. *Id.* Public policy and case law from sister jurisdictions were also considered, with this Court noting that other courts allowed similar assignments where they were transferred with other assets and obligations. *Id.* at 42–43, 293 P.3d at 666–67.

We recognize that neither *MacLeod* nor *Luciani* dealt with a sheriff's sale or writ of execution. However, these two cases considered the assignability of tort claims and each guides our decision on whether Angelos's unliquidated defamation action is subject to execution. *MacLeod* specifically contains a bright-line rule that applies to Angelos's case based on its reasoning that defamation claims—specifically "libel, slander, and the like"—are "injuries of a personal nature" that "may not" be assigned. 43 Idaho at 75, 249 P. at 257. As some courts have noted:

> Assignability of things in action is now the rule; nonassignability, the exception; and this exception is confined to wrongs done to the person, the reputation, or the feelings of the injured party, and to contracts of a purely personal nature. . . .

*Everts v. Will S. Fawcett Co.*, 74 P.2d 815, 816 (Cal. App. 1937) (quoting *Meech v. Stoner*, 19 N.Y. 26, 29 (1859)).

Here, Angelos filed a lawsuit that included at least two claims for defamation: libel and libel per se. He alleges that the Schatzels and Pinedas are operating a Website that is damaging his business and reputation, resulting in lost income and a resulting inability to pay his debts. Further, Angelos argues that subcontractors connected to his business have threatened to post new negative comments on the Website as a way to hold Angelos "hostage" with "unfounded financial demands." As a result of the sheriff's sale, Angelos lost his right, title, and interest to the underlying defamation action to the very person causing him the alleged harm when Schatzel was the highest bidder in the auction.

We hold that under *MacLeod*, "libel, slander, and the like" are not assignable claims. Therefore, because Angelos's defamation claims are personal, and cannot be assigned to another party, they cannot be subject to execution—which is effectively an involuntary assignment of property to pay a judgment creditor. Thus, *MacLeod*'s rule of "nonassignability" applies here and creates an exception to execution under Idaho Code section 11-201. Accordingly, we conclude

11

that the district court should not have permitted Schatzel to substitute as the plaintiff on Angelos's defamation claims and then dismiss the action with prejudice.

Schatzel also argues that Angelos's appeal should fail because it is effectively a collateral attack on the sheriff's sale since Angelos failed to file a claim of exemption under Idaho Code section 11-203. That statute lays out the procedures for a debtor to claim an exemption to property that is levied upon. Claims of exemption may also be filed by a third party that has a secured interest in the property. *Id*. The sheriff cannot deliver to the plaintiff or sell the property levied upon until the period for filing a claim has elapsed. I.C. § 11-203(c).

This argument fails for two reasons. First, it misperceives Idaho Code section 11-203. Nothing in the statute makes filing for an exemption mandatory or implies that the failure to file an exemption form would be an automatic waiver or forfeiture of rights. Even after the fourteen days for filing a debtor's claim of exemption has passed, I.C. § 11-203(a), the statute specifically provides:

> *At any time* after the entry of a judgment that may be enforced by writ of execution as provided in section 11-104, Idaho Code, the judgment debtor, or any third party who claims a security interest or other interest in the property of the judgment debtor, *may move the court for an order of exemption* identifying the property for which the exemption is claimed and setting forth the grounds, *arising under this title or common law*, upon which he claims an exemption or, in the case of a third party, an interest in the property, and in the case of a secured party, also stating the dollar amount of such secured party's claim.

I.C. § 11-203(h) (emphasis added). Likewise, section 11-203 further specifies that "[n]othing in this section shall be construed to prevent the defendant from pursuing his common law remedies." I.C. § 11-203(f).

Second, and more importantly, section 11-203 is inapplicable here because we have already held, *supra*, that a defamation claim is not assignable because it is "personal in nature." *MacLeod*, 43 Idaho at 74, 249 P. at 257. If the claim cannot be assigned, it is not capable of being levied upon and sold to someone else. Thus, there is no need for a debtor to seek a claim of exemption for property that is not within the reach of Idaho Code section 11-201.

In reaching this determination we are still left with the question of whether any of Angelos's other claims survive death or transfer of interest and are, thus, assignable. *MacLeod*, 43 Idaho at 74, 249 P. at 257 (citing Idaho Comp. Stat. § 6652). In addition to pleading claims for libel per se and libel, Angelos has alleged claims for breach of the Idaho Consumer Protection Act, invasion of privacy and false light, misappropriation of name, tortious interference with a

prospective economic advantage, violation of the Idaho Competition Act, trademark infringement and unfair competition, bad faith cybersquatting, unfair competition under the Lanham Act, cyberpiracy, intentional infliction of emotional distress, and intentional interference with a prospective civil action by spoliation of evidence. Application of *MacLeod* raises the question of whether any of these other claims are also "personal in nature," like the libel and libel per se claims.

As a court of appellate review, we do not act as a fact finder on appeal. *See Safaris II*, 163 Idaho at 886, 421 P.3d at 217 ("The absence of such a finding leaves us unable to conduct a proper appellate review, given that we do not find facts on appeal."). Therefore, because this issue has yet to be addressed by the district court, we will remand the case for the trier of fact to determine whether any of Angelos's remaining claims, aside from libel and libel per se, are personal and nonassignable to Schatzel, and which claims were properly transferred to Schatzel through the sheriff's sale. Per *MacLeod*, Angelos's defamation claims are expressly unassignable. However, the remaining claims are fact specific and are best reviewed in the first instance by the trial court to determine whether they survive death or transfer of interest—such as those that "diminish the estate"—and may be assignable and, thus, subject to execution. *See MacLeod*, 43 Idaho at 75–76, 249 P. at 257 (citing Idaho Comp. Stat. § 6652).

Accordingly, we hold that Angelos's defamation claims are not subject to execution. The district court abused its discretion in granting Schatzel's motion to substitute under Idaho Rule of Civil Procedure 25(c) because Angelos's interests in at least the libel claims could not be transferred as a matter of Idaho law. Therefore, we vacate (1) the district court's order granting Schatzel's motion to substitute and (2) the judgment dismissing the case with prejudice. On remand, the district court must determine which, if any, of Angelos's remaining claims he still retains, and which were transferred to Schatzel.

## C. Schatzel is not entitled to attorney fees.

While Angelos did not request attorney fees on appeal, Schatzel argues that he is entitled to an award of fees under Idaho Code section 12-120(1). That statute creates a mandatory award of attorney fees to the prevailing party in personal injury actions "where the amount pleaded is thirty-five thousand dollars ($35,000) or less . . . ." I.C. § 12-120(1). However, since Schatzel is not the prevailing party on appeal, he is not entitled to an award of attorney fees. On the other hand, Angelos is the prevailing party, which entitles him to costs as a matter of right. I.A.R. 40(a).

13

## IV. CONCLUSION

For the reasons explained herein, we vacate and remand the decisions of the district court (1) granting Schatzel's motion to substitute, and (2) dismissing Angelos's case against the Schatzels and Pinedas with prejudice. Pursuant to *MacLeod*, Angelos's defamation claims are not assignable choses in action and, thus, not properly subject to execution as "other property" under Idaho Code section 11-201. Whether any of the remaining claims purchased by Schatzel at the sheriff's sale are properly assignable will be determined by the district court on remand.

Chief Justice BEVAN, Justices BRODY, ZAHN and MEYER CONCUR.